of goods and the measure of damages for breach of a contract to manufacture goods or machinery, do not apply to the present case, which involves a contract for an exclusive agency in which it is alleged that the defendant agreed not to sell directly to any other persons within the territory named and to refer all orders or inquiries from prospective customers to the plaintiff. While the damages in an action of this kind based upon prospective profits are necessarily somewhat speculative in their nature, I know of no decision which holds that the plaintiff is thereby precluded from availing himself of his remedy by attachment, provided he can show by affidavits facts from which it may be fairly presumed that he will suffer damages in a fixed sum. This, I think, the plaintiff has done.

The motion to vacate the attachment is denied, with $10 costs.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, DOWLING, and HOTCHKISS, JJ.

V. P. Donihee, of New York City, for appellant.

W. M. Geer, Jr., of New York City, for respondent.

PER CURIAM. Order affirmed, with $10 costs and disbursements, on the opinion of Page, J., at Special Term. Order filed.

CONTINENTAL SECURITIES CO. et al. v. NEW YORK CENT. R. CO. et al.

(Supreme Court, Appellate Division, Second Department. May 25, 1915.)

1. RAILROADS ⊚⟹150—CONSOLIDATION—BOND ISSUE.
  The issuance by a consolidated railroad company of 4 per cent. bonds to be exchanged for 3½ per cent. bonds of one of the constituent companies is not an issuance of bonds against, or as a lien on, a contract for consolidation or merger, contrary to Public Service Commissions Law (Consol. Laws, c. 48) § 55.
  [Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 461, 462; Dec. Dig. ⊚⟹150.]

2. RAILROADS ⊚⟹150—CONSOLIDATION—BOND ISSUES—STATUTES.
  Public Service Commissions Law, § 55, prohibiting capitalization of any contract for consolidation or lease, or the issuance of bonds against such contract, and Penal Law (Consol. Laws, c. 40) § 668, penalizing a bondholder in a corporation who sells his vote, cannot be construed to apply to a proposal for consolidation of railroad corporations in which 4 per cent. bonds of the consolidated corporations are to be exchanged for 3½ per cent. bonds of one of the constituent companies.
  [Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 461, 462; Dec. Dig. ⊚⟹150.]

3. RAILROADS ⊚⟹150—CONSOLIDATION—BOND ISSUE.
  A proposal by the directors of railroad companies, looking toward a consolidation of such corporations, that, if the bondholders of one of the constituent companies will agree to the consolidation, the consolidated company will exchange its 4 per cent. bonds for such of the 3½ per cent. bonds of the constituent company as the owners thereof desire to exchange, does not violate Railroad Law (Consol. Laws, c. 49) § 141, providing that the capital stock of a consolidated corporation shall not exceed the sum of the capital stock of the constituent corporations, nor shall any bonds be issued as a consideration for or in connection with such consolidation, when that section is construed with section 142, authorizing

the consolidated company to issue its bonds to retire the existing bonds of constituent compânies.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 461, 462; Dec. Dig. ☞150.]

4. RAILROADS ☞15—CONSOLIDATION—BOND ISSUE—STATUTE—CONSTRUCTION.

The prohibition in Railroad Law, § 141, against increase of capital and issuance of bonds in connection with a railroad consolidation, being in derogation of the general authority to consolidate, must be strictly construed, and limited to indebtedness already accrued; that is, to principal and past-due interest.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 31; Dec. Dig. ☞15.]

Appeal from Special Term, Westchester County.

Suit by the Continental Securities Company and others against the New York Central Railroad Company and others. Judgment dismissing the complaint on its merits, and plaintiffs appeal. Affirmed.

See, also, 152 N. Y. Supp. 1105; Venner v. New York Cent. & H. R. R., 160 App. Div. 127, 145 N. Y. Supp. 725.

Argued before JENKS, P. J., and THOMAS, STAPLETON, MILLS, and RICH, JJ.

J. Aspinwall Hodge, of New York City, for appellants.

A. H. Harris, of New York City (Francis Lynde Stetson, of New York City, on the brief), for respondent railroad company.

Frederick L. Allen, of New York City (William W. Green and Murray Downs, both of New York City, on the brief), for respondents Mutual Life Ins. Co. of New York and Equitable Life Assur. Society of United States.

MILLS, J. This is an action brought by the plaintiffs, as stockholders of the New York Central Railroad Company, in their own behalf and in behalf of all other such stockholders, against the said company and certain other defendants, to enjoin the said company from issuing certain 4 per cent. interest-bearing bonds to replace and retire certain outstanding 3½ per cent. bonds as an incident of the proposed consolidation with that company of the Lake Shore & Michigan Southern Railway Company.

The contention of the plaintiffs is that such issue of the new bonds would violate both section 141 of the Railroad Law and section 55 of the Public Service Commission Law. At the Westchester Special Term for Motions, upon a motion duly made, a temporary injunction was granted. The justice presiding wrote an opinion indicating that he sustained the plaintiffs' contention. Very shortly thereafter, the case was tried at the Westchester Special Term for Trials. The justice there presiding came to the opposite conclusion, and accordingly gave decision to the defendants, upon which judgment was duly entered, from which the plaintiffs appealed to this court.

There appears to be no controverted question of fact in the case. In 1898 the New York Central & Hudson River Railroad Company, one of the predecessor companies of the present New York Central Railroad Company, one of the defendants here, purchased a large part,

about 90 per cent., of the capital stock of the Lake Shore & Michigan Southern Railway Company at the rate of $200 a share, and paid for the same in its bonds bearing interest at the rate of 3½ per cent., secured by a special pledge of the stock so purchased with a certain trust company, under a certain agreement which, among other things, provided, in effect, that there should be no consolidation of the Lake Shore & Michigan Southern Railway Company with the said New York Central, except "upon such terms as shall be approved by the holders of 75 per cent. in amount of the bonds secured by this indenture," viz., said 3½ per cent. bonds.   For some years past the directors of both companies have been considering the subject of consolidation, with the result that a proposed plan for such consolidation was, in December, 1911, in the form of a circular, submitted to the holders of those bonds, proposing that, in case the consolidation should be effected, the said New York Central would issue its new bonds to replace the present ones at the same rate of interest; but the requisite number of consents was not obtained from such bondholders.   Thereafter a new or revised plan was proposed, by which the new bonds to be so issued and used were to bear four per cent. interest instead of three and one-half. To this plan the requisite consents were secured.   Due application was made to the Public Service Commission of this state, and that commission made its order December 12, 1914, finally consenting to and approving the proposed consolidation and the issue of the proposed new bonds.   The approval and consent of the Public Service Commissions of certain other states necessary to be had, namely Pennsylvania, Michigan, and Illinois, were likewise obtained.   Upon each application to either of those commissions the plaintiffs appeared and were heard in opposition.   Thereafter this present action was brought.

The sole question presented for determination by this appeal is whether or not the scheme of issuing 4 per cent. bonds, to refund and replace such part of the present 3½ per cent. bonds as the holders thereof may elect to have so replaced, will constitute a violation of section 141 of the Railroad Law, and of section 55 of the Public Service Commissions Law, or of either of them.   The pertinent parts of those sections are as follows:

"But in no case shall the capital stock of the corporation formed by such consolidation exceed the sum of the capital stock of the corporations so consolidated, at the par value thereof.   Nor shall any bonds or other evidences of debt be issued as a consideration for, or in connection with, such consolidation."   Railroad Law, § 141.

"Nor shall the capital stock of a corporation formed by the merger or consolidation of two or more other corporations, exceed the sum of the capital stock of the corporations so consolidated, at the par value thereof, or such sum and any additional sum actually paid in cash; nor shall any contract for consolidation or lease be capitalized in the stock of any corporation whatever; nor shall any corporation hereafter issue any bonds against or as a lien upon any contract for consolidation or merger."   Public Service Commissions Law, § 55.

[1] It seems plain that such proposed issue of the new 4 per cent. bonds can by no manner of construction be held to be in violation of said section 55 of the Public Service Commissions Law.   Those new bonds are not proposed to be and will not in any sense be issued

"against or as a lien upon any contract for consolidation or merger." The plain purpose of that particular statutory provision is to prohibit the capitalization, by a stock or bond issue, of the mere contract for consolidation. Here the bonds are to be issued as a result of the completed consolidation, and to be the securities of the actually consolidated corporation.

[2] It is my opinion that neither the said section 55 nor section 668 of the Penal Law, cited by the appellants' counsel as indicating the public policy of the state, is to be construed as relating to the proposal of a plan for consolidation, and the offer therein of advantages to assenting parties to be realized as a result of the completed consolidation.

[3] The question whether or not the plan is in violation of section 141 of the Railroad Law is, upon the facts here, limited to the question whether the proposed increase of one-half of 1 per cent. in the interest rate upon the new bonds over that upon the present, so far as the same may, at the option of the holders, be exchanged, will constitute the issue of "bonds or other evidences of debt * * * as a consideration for, or in connection with, such consolidation." The following section 142 of the Railroad Law must, of course, be read in connection with said section 141, and, so read, it clearly shows that the issuing of the new bonds by the consolidated corporation, to refund or replace the old, is not prohibited, but, on the contrary, is expressly allowed. The statute nowhere contains any express limitation upon the rate of interest of the new bonds, and it does not appear that any such limitation may be implied. Indeed, the learned counsel for the appellants, in his argument here, stated, in effect, that he does not question that "upon a consolidation a bond of a higher rate of interest may retire a bond of a lower rate." This much being conceded, there does not appear to be substantial force in his contention that the mere fact that, in the proposal issued by the company seeking to effect the consolidation, it was stated that the same, if effective, should be upon condition that the new bonds to take up the old should be issued at the proposed increased rate of interest, would make the issue of the proposed new bonds a violation of the prohibition contained in said section 141. If it be competent, as a result of the consolidation, for such company to issue the new bonds at an increased rate of interest, it must also be competent for it, in its proposal to interested parties of its plan for such consolidation, to state that as one of the features of such plan, and the two sections, 141 and 142, taken together, must not be construed so as to prevent such statement or indeed such subsequent issue of the new bonds. No doubt, in a literary or popular sense, any feature of the plan set forth in such proposal may be said to be a consideration for the solicited assents to the plan.

[4] Moreover, it would seem that the prohibition contained in said section 141, being in derogation of the general authority to consolidate otherwise given, must be strictly, not broadly, construed, and therefore must be limited in its application to the indebtedness already accrued—that is, the principal and any past-due interest.

There seems to be no decision by any court directly in point upon this particular question. There are, however, several such decisions by

the courts of other states applying this rule of construction to various constitutional and statutory provisions limiting the amount of municipal indebtedness. The learned justice at Special Term, in granting the motion for temporary injunction, stated in his opinion, in effect, that such provisions limiting municipal indebtedness must of necessity be so construed, as otherwise the principal and the interest to accrue in the future upon a relatively small municipal indebtedness would exceed the limit. It would seem that there was an equal argument from necessity in favor of holding that an advantage set forth in a proposal for such consolidation, to accrue to an assenting party from the consolidation, if effected, should not be regarded as a consideration given for such assent, and so as violating said section 141.

Therefore my conclusion is that the proposed issue of 4 per cent. bonds to retire the present 3½ per cent. bonds will not violate either section 141 of the Railroad Law or section 55 of the Public Service Commissions Law. Hence I advise that the judgment appealed from be affirmed, with costs.

The parties hereto having stipulated in open court that a justice may be substituted in place of BURR, J., deceased, Mr. Justice MILLS was so substituted.

Judgment affirmed, with costs. All concur.